1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

ANOVA APPLIED
ELECTRONICS, INC.,

                   Plaintiff,

    v.

INKBIRD TECH. C. L., et al.,

                   Defendants.

CASE NO. C23-0845JLR

ORDER

16

17

18

19

20

21

22

## I.      INTRODUCTION

Before the court is Plaintiff Anova Applied Electronics, Inc.'s ("Anova") renewed *ex parte* motion for injunctive relief to enjoin the distribution of certain products that Anova alleges infringe upon its patent and trademarks.  (Mot. (Dkt. # 18).)  Anova represents that it has provided notice of its motion by email to Defendant Inkbird Tech. C.L. ("Inkbird").  (7/24/23 Billick Decl. (Dkt. # 23 at 5-8) ¶ 3.)  It also states, however, that it has not found a way to provide notice to Defendants Shenzhen Jingtaitengda

1    Technology Co., Ltd., which does business on Amazon.com as "Dreamytenda"

2    ("Dreamytenda") and Shenzhenshi Yingbozhikong Keji Youxian Gongsi, which does

3    business on Amazon.com as "Mixtea360" ("Mixtea360").  (*Id.* ¶ 4.)  None of the

4    Defendants have appeared in this action or responded to Anova's motion.  (*See* Dkt.)

5    The court has considered Anova's motion, its filings in support of its motion, the balance

6    of the record, and the governing law.  Being fully advised,[1] the court DENIES Anova's

7    motion for injunctive relief.

8                         **II.     BACKGROUND**

9          Anova asserts that it is "a global company and a global leader in kitchen

10   appliances and accessories" and that its Precision Cooker sous vide[2] cooking device "has

11   become the best-selling sous vide device on the market today."  (Compl. (Dkt. # 1) ¶ 12.)

12   Anova holds United States Pat. No. 1,045,967 (the "'967 Patent") which "is directed

13   towards a device which can be partially immersed in a vessel of water, such that a heater

14   in the vessel can maintain the temperature of the water within a defined range to allow

15   foodstuffs, packed in vacuum sealed bags, to be immersed in water and cooked."  (*Id.*

16   ¶ 13; *see id.*, Ex. 1 (the '967 Patent).)  Anova also holds two registered trademarks in its

17   Precision brand:  Reg. No. 4,989,116 for "PRECISION" in connection with constant

18

19   ───────────────

20   [1] Although Anova has requested oral argument (*see* Mot. at 1), the court finds that oral
     argument would not be helpful to its resolution of the motion, *see* Local Rules W.D. Wash. LCR
     7(b)(4).

21   [2] "The 'sous vide' technique of cooking involves cooking ingredients in a vacuum-sealed
     pouch submerged in water, typically at a long time at a low temperature."  (Compl. (Dkt. # 1)

22   ¶ 15.)

1  temperature immersion circulators for use in cooking and Reg. No. 6,392,242 for

2  "PRECISION" in connection with sous vide machines and electric sous vide cookers

3  (together, the "PRECISION Marks").  (Compl. ¶¶ 15-16; *see id.*, Exs. 2-3 (registration

4  certificates).)

5      According to Anova, Defendants Inkbird, Dreamytenda, and Mixtea360 (together,

6  "Defendants") infringed its patent and trademarks by manufacturing, importing, offering

7  for sale, and selling "certain 'Inkbird Precision Cooker' products" (the "Accused

8  Products") in the United States.  (*Id.* at 2.)  Specifically, Anova alleges claims against

9  Defendants for infringement of the '967 Patent and the PRECISION Marks; unfair

10 competition, false designation of origin, and false and misleading representation in

11 violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution in violation

12 of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); trademark infringement and

13 unfair competition in violation of Washington common law; and violation of the

14 Washington Consumer Protection Act, ch. 19.86 RCW.  (*Id.* ¶¶ 24-90.)  Anova seeks,

15 among other relief, preliminary and permanent injunctions enjoining Defendants from

16 infringing the '967 Patent and PRECISION Marks; damages; treble damages for willful

17 infringement; and attorney's fees and costs.  (*Id.* at 27-30.)

18     On June 20, 2023, Anova filed an *ex parte* motion for a preliminary injunction in

19 which it asked the court to order Defendants "to immediately cease advertising, offering,

20 selling, and importing . . . in the United States" the Accused Products.  (6/20/23 Mot.

21 (Dkt. # 10).)  The court denied the motion on June 22, 2023.  (6/22/23 Order (Dkt. # 14).)

22 The court explained that it "may issue a preliminary injunction only on notice to the

adverse party" and instructed Anova that it could either renew its motion with proof that it had given notice to Defendants pursuant to Federal Rule of Civil Procedure 65(a)(1) or file a motion for a temporary restraining order ("TRO") without notice pursuant to Federal Rule of Civil Procedure 65(b) and Local Rules W.D. Wash. LCR 65(b).  (*Id.* (quoting Fed. R. Civ. P. 65(a)(1)).)

Anova has now filed a renewed motion seeking (1) a preliminary injunction against Inkbird and (2) a TRO against Dreamytenda and Mixtea360.  (*See generally* Mot.)  It again asks the court to "order all Defendants to immediately cease advertising, offering, selling, and importing" the Accused Products in the United States, and it states that it is prepared to post a bond pursuant to Federal Rule of Civil Procedure 65(c).  (*Id.* at 19.)  Anova represents that (1) it has given Inkbird notice of this motion by email; and (2) because it does not have email addresses for Dreamytenda and Mixtea360, it has initiated the process of serving these Defendants (and Inkbird) via the Hague Convention. (*See generally* 7/24/23 Report (Dkt. # 23 at 1-4); 7/24/23 Billick Decl. ¶¶ 3-4.)  None of the Defendants have contacted Anova about this dispute.  (7/24/23 Billick Decl. ¶ 5.)

## III.   ANALYSIS

Federal Rule of Civil Procedure 65 empowers the court to issue preliminary injunctions and TROs.  Fed. R. Civ. P. 65.  Preliminary injunctions and TROs are "extraordinary remed[ies] never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The court applies the same standards when evaluating motions for preliminary injunctions and motions for TROs.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,

240 F.3d 832, 839 n.7 (9th Cir. 2001).  A party seeking these forms of injunctive relief "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  The Ninth Circuit also employs a sliding scale approach under which "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  For the reasons set forth below, the court concludes that Anova has not established a likelihood that it will suffer irreparable harm in the absence of preliminary relief and DENIES Anova's motion for a preliminary injunction and TRO.

A plaintiff seeking an injunction "must make a clear showing that it is at risk of irreparable harm, which entails showing a likelihood of substantial and immediate irreparable injury." *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012); *see also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013).  The plaintiff must demonstrate that: (1) "absent an injunction, it will suffer irreparable harm"; and (2) "a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *Apple Inc.*, 695 F.3d at 1374.  The movant "must proffer evidence sufficient to establish a likelihood of irreparable harm"; it cannot rely on "unsupported" or "conclusory" assertions of harm. *Herb Reed Enters.*, 736 F.3d at 1250-51.  It must also establish that remedies available at law, such as monetary

1  damages, are inadequate to compensate for the harm caused by continued alleged

2  infringement.  *Id.* at 1250; *see Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930

3  (Fed. Cir. 2012) ("[T]he irreparable harm inquiry seeks to measure harms that no

4  damages payment, however great, could address.").

5          Anova asserts that absent an injunction and TRO, it will "continue to lose market

6  share and reputation as an industry leader."  (Mot. at 16.)  It reasons that because

7  households rarely purchase multiple sous vide devices, "when a person purchases a lower

8  cost competing device that infringes Anova's intellectual property, Defendants gain an

9  unfair advantage by effectively removing that person from the potential buyer . . . pool

10  until a need to buy a new sous vide arises."  (*Id.*)  It also asserts that "regardless of the

11  volume sold of Accused Products, Anova losing control over its PRECISION Marks is

12  sufficient basis to find the likelihood of irreparable harm."  (*Id.* at 17 (citing *2Die4Kourt*

13  *v. Hillair Capital Mgmt., LLC*, 692 F. App'x 366, 369 (9th Cir. 2017)).)

14          Anova does not, however, present sufficient evidence to support its assertions of

15  irreparable harm.  First, the only evidence Anova cites in its discussion of harm are

16  exhibits to its complaint comprised of screenshots of Defendants Dreamytenda and

17  Mixtea360's Amazon product listing pages showing that the alleged infringing products

18  had garnered hundreds or thousands of views.  (Mot. at 16-17 (first citing Compl., Ex. 4

19  at 4 (screenshot showing that the Inkbird WIFI Sous Vide Machine received 5,040 ratings

20  on Amazon.com); and then citing *id.*, Ex. 5 at 14 (screenshot showing that the Inkbird

21  WiFi Sous Vide Cooker received 418 ratings on Amazon.com)).)  The mere fact that

22  Amazon customers have reviewed Defendants' products, however, is not enough to

1    convince the court that Anova will be irreparably harmed absent an injunction.  Second,

2    contrary to Anova's assertion that "losing control" over its PRECISION Marks is enough

3    to establish a likelihood of irreparable harm (*id.* at 17), the Ninth Circuit has made clear

4    that a finding of irreparable harm cannot be based "solely on a strong case of trademark

5    infringement;" rather, the movant must establish irreparable harm with evidence.  *Herb*

6    *Reed Enters.*, 736 F.3d at 1251 (reasoning that inferring irreparable harm from a strong

7    case of infringement "collapses the likelihood of success and the irreparable harm

8    factors" of the preliminary injunction test).  Finally, even if Anova could establish its

9    claimed harms, it does not address, let alone provide evidentiary support for, the

10   requirement that monetary damages be inadequate to compensate those harms.  (*See*

11   *generally* Mot.)  Because Anova's assertions of harm are merely conclusory statements

12   without evidentiary support, the court finds that Anova has not met its burden to establish

13   that it is likely to suffer irreparable harm in the absence of an injunction.  Accordingly,

14   the court DENIES Anova's renewed motion for injunctive relief.[3]

15   //

16   //

17   //

18   //

19   //

20   //

21   _____

22   [3] Because Anova fails to demonstrate irreparable harm, the court need not address the
     other factors of the preliminary injunction test.  *See, e.g.*, *Perfect 10, Inc. v. Google, Inc.*, 653
     F.3d 976, 982 (9th Cir. 2011).

ORDER - 7

# IV.    CONCLUSION

For the foregoing reasons, the court DENIES Anova's renewed ex parte motion for injunctive relief (Dkt. # 18).

Dated this 11th day of August, 2023.

JAMES L. ROBART
United States District Judge