UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANOVA APPLIED
ELECTRONICS, INC.,

                        Plaintiff,

        v.

INKBIRD TECH C.L., et al.,

                        Defendants.

CASE NO. C23-0845JLR

ORDER

## I.  INTRODUCTION

Before the court is Plaintiff Anova Applied Electronics, Inc.'s ("Anova") motion for an extension of time to serve Defendants,[1] for alternative service of process, and to extend the deadlines set forth in the court's initial scheduling order.  (Mot. (Dkt. # 27).)

---

[1] Defendants are Inkbird Tech. C.L. ("Inkbird"); Shenzhen Jingtaitengda Technology Co., Ltd., doing business on Amazon.com as Dreamtytenda ("Dreamtytenda"); and Shenzhenshi Yingbozhikong Keji Youxian Gongsi, doing business on Amazon.com as Mixtea360 ("Mixtea360").  (*See generally* Compl. (Dkt. # 1).)

ORDER - 1

1   None of the Defendants have been served and none have appeared in this action.  (*See*

2   *generally* Dkt.)  The court has considered Anova's motion, all materials submitted in

3   support of the motion, the relevant portions of the record, and the applicable law.[2]  Being

4   fully advised,[3] the court GRANTS in part and DENIES in part Anova's motion.

## II.   BACKGROUND[4]

6         Anova asserts that it is "a global leader in kitchen appliances and accessories" and

7   that its Precision Cooker sous vide cooking device "has become the best-selling sous vide

8   device on the market today."  (Compl. ¶ 12.)  Anova holds a patent and two trademarks

9   associated with its Precision Cooker and Precision brand.  (*Id.* ¶¶ 13, 15-16; *see id.*, Exs.

10  1-3.)  Defendants are three Chinese entities.  (*Id.* at 4-5.)  According to Anova,

11  Defendants infringed its patent and trademarks by manufacturing, importing, offering for

12  sale, and selling "certain 'Sousvide Art Precision Cooker' products" (the "Accused

13  Products") in the United States.  (*Id.* at 2.)  Below, the court discusses the efforts Anova

14  has made so far to identify and serve or obtain waivers of service from Defendants.

15        1. <u>Inkbird</u>

16        Anova represents that it emailed copies of the complaint and case schedule to the

17  U.S. trademark lawyers listed as counsel-of-record in United States Patent and

---

18  [2] Although the motion is noted for September 22, 2023 (*see* Dkt.), the court exercises its
19  discretion under Federal Rule of Civil Procedure 1 to decide the motion before the noting date.

20  [3] No one has requested oral argument (*see* Mot.; Dkt.), and the court has determined that
    oral argument would not be helpful to its disposition of the motions, *see* Local Rules W.D.
21  Wash. LCR 7(b)(4).

22  [4] The court detailed the factual background of this case in its August 11, 2023 order and
    does not repeat that background here.  (*See* 8/11/23 Order (Dkt. # 24) at 2-4.)

1  Trademark Office ("USPTO") records for the INKBIRD trademarks.  (9/11/23 Billick

2  Decl. (Dkt. # 26) ¶¶ 4-8, 12.[5])  Anova received a "read receipt" from one of the lawyers,

3  Hao Ni, on September 8, 2023.  (*Id.* ¶ 12.)  Anova does not state whether it asked any of

4  the lawyers to accept service on behalf of Inkbird.  (*See generally id.*)

5      Anova represents that it also sent copies of its renewed motion for a preliminary

6  injunction, the case schedule, the complaint, and service waivers directly to Inkbird using

7  the email addresses listed on the contact page of Inkbird's website.  (Service Status

8  Report (Dkt. # 23) ¶ 3.)  Anova states that it has not received a response from Inkbird.

9  (*Id.*)

10      2.  Dreamtytenda and Mixtea360

11      Anova states that it has been unable to obtain email addresses associated with

12  Dreamtytenda and Mixtea360 thus far.  (*See generally* 9/11/23 Billick Decl.)  Anova's

13  searches for "Dreamtytenda" and "Mixtea360" on USPTO's database yielded no results.

14  (*Id.* ¶ 4.)  Additionally, Amazon "refused" to give Anova the email addresses associated

15  with these Defendants' Amazon Seller Profiles.  (*Id.* ¶ 3.)

16      However, Anova contends that serving Inkbird will give Dreamtytenda and

17  Mixtea360 notice of this action because both Defendants "appear to be working closely

18  with Inkbird in some fashion."  (Mot. at 7.)  Anova bases this assertion on Dreamtytenda

19  and Mixtea360's Amazon.com storefronts, which show that Dreamtytenda is currently

20

21      [5] Anova also asserts that it obtained, using USPTO records, an email address for the
individual listed as the applicant on one of the INKBIRD trademark applications.  (9/11/23
Billick Decl. ¶¶ 8.)  Anova does not, however, state that it emailed this individual and

22  case-related documents.  (*See generally id.*)

1  selling infringing Inkbird-brand sous vide devices, and that Mixtea360 is currently selling

2  "non-accused Inkbird-branded products." (*Id.* at 6-7; 9/11/23 Billick Decl. ¶¶ 9-11.)

3          3.  Service via the Hague Convention

4          On July 24, 2023, Anova submitted a request to serve Defendants via the Hague

5  Convention, which was approved on July 25. (9/11/23 Billick Decl. ¶ 2.) Anova used

6  the physical addresses listed in Defendants' Amazon Seller Profiles when making its

7  request. (*Id.*; *see also* Compl. at 4-5.) Anova represents that the current "status on these

8  requests shows as 'Transferred to the Supreme People's Court for further processing.'"

9  (9/11/23 Billick Decl. ¶ 2.)

10                      **III.    ANALYSIS**

11         Anova now asks the court for permission to serve Defendants using the email

12  addresses it has identified as being associated with Inkbird and its purported U.S.

13  trademark counsel. (*See generally* Mot. at 6-7, 10-12.) Anova also asks the court to

14  extend the deadline to serve Defendants and the deadlines set forth in the court's initial

15  scheduling order. (*Id.* at 8, 12.)

16         The court begins by addressing Anova's request for alternative service of process

17  before turning to Anova's requests for extensions of the service deadline and the

18  deadlines set forth in the court's initial scheduling order.

19  **A.    Alternative Service of Process**

20         The court sets forth the relevant legal standard before considering whether

21  alternative service is warranted in this case.

22  //

ORDER - 4

1     1. <u>Legal Standard</u>

2     Federal Rule of Civil Procedure 4(h) governs service of process on foreign

3 businesses. Fed. R. Civ. P. 4(h). Rule 4(h)(2) authorizes service of process on a foreign

4 corporation "at a place not within any judicial district of the United States, in any manner

5 prescribed by Rule 4(f) for serving an individual, except personal delivery under

6 (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rules 4(f)(1) and 4(f)(2) provide specific methods

7 of serving process on individuals in foreign countries. *See* Fed. R. Civ. P. 4(f)(1)-(2).

8 Rule 4(f)(3) allows international service by a method not listed in Rule 4(f)(1) or (2) if

9 the method is "not prohibited by international agreement, as the court orders." Fed. R.

10 Civ. P. 4(f)(3). As long as the method of service is "court-directed and not prohibited by

11 an international agreement, service of process ordered under Rule 4(f)(3) may be

12 accomplished in contravention of the laws of the foreign country." *Rio Props., Inc. v. Rio*

13 *Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002); *id.* at 1015 n.4 ("A federal court

14 would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international

15 agreement, including the Hague Convention, referenced in Rule 4(f)(1)."). "Service

16 under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief'"; rather, "[i]t is

17 merely one means among several which enables service of process on an international

18 defendant." *Id.* at 1015. It is within a court's "sound discretion" to determine whether

19 "the particularities and necessities of a given case require alternate service of process

20 under Rule 4(f)(3)." *Id.* at 1016.

21     "Even if facially permitted by Rule 4(f)(3)," however, "a method of service of

22 process must also comport with constitutional notions of due process." *Id.* at 1016.

1    "[T]rial courts have authorized a wide variety of alternative methods of service including

2    publication, ordinary mail, mail to the defendant's last known address, delivery to the

3    defendant's attorney, telex, and most recently, email." *Id.* at 1016.  The "method of

4    service crafted by the district court must be 'reasonably calculated, under all the

5    circumstances, to apprise interested parties of the pendency of the action and afford them

6    an opportunity to present their objections.'" *Id.* at 1016-17 (quoting *Mullane v. Cent.*

7    *Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

8          2.  Analysis

9          Anova argues that service by email is appropriate because (1) service under the

10   Hague Convention "is uncertain" and (2) Anova's emails thus far have elicited no

11   responses.  (Mot. at 10.)  Anova asserts that serving Defendants using the email addresses

12   it has identified as being associated with Inkbird and its purported U.S. trademark

13   counsel is permissible under Rule 4(f)(3) and comports with due process requirements.

14   (*Id.* at 8-12.)

15         Although service under Rule 4(f)(3) is available "without first attempting service

16   by other means," the moving party must show "that the facts and circumstances of the

17   present case necessitate[] . . . alternative means of service." *Rio Props.*, 284 F.3d at

18   1016.  "That implies that a plaintiff [must] make some demonstration that other methods

19   of service are impracticable or unavailable." *In re Cathode Ray Tube Antitrust Litig.*, No.

20   07-CV-5944-JST, 2020 WL 13303554, at *2 (N.D. Cal. Oct. 26, 2020).  Courts consider

21   a variety of factors when evaluating whether alternative service is warranted, including

22   (1) "the plaintiff's effort to locate the defendant's address and whether the address could

1    not be found," (2) whether the defendant is purposefully evading service of process, and

2    (3) "whether service under the Hague Convention was attempted or otherwise feasible."

3    *See, e.g.*, *Keck v. Alibaba.com, Inc.*, 330 F.R.D. 255, 258 (N.D. Cal. 2018) (denying

4    motion for alternative service where plaintiff "ha[d] not provided evidence that the

5    locations of the Additional Defendants [were] unknowable"); *Amazon.com, Inc. v. Tian*,

6    No. C21-0159TL, 2022 WL 486267, at *4 (W.D. Wash. Feb. 17, 2022) (denying motion

7    for alternative service where no Hague Convention service had been attempted and no

8    issues of urgency had been identified); *Rio Props.*, 284 F.3d at 1012-13, 1016

9    (authorizing alternative service where plaintiff made multiple good faith yet unsuccessful

10   efforts to serve defendant and established that defendant was "striving to evade service of

11   process").  For the reasons discussed below, the court concludes that Anova has failed to

12   establish, at this stage, that "the particularities and necessities of [this] case require

13   alternate service of process under Rule 4(f)(3)."  *Rio Props.*, 284 F.3d at 1016.

14       First, Anova has obtained physical addresses for Defendants through their

15   Amazon Seller Profiles.  (*See* Compl. at 4-5; 9/11/23 Billick Decl. ¶ 2.)  Anova has not,

16   however, attempted to verify the accuracy of these addresses nor put forth any relevant

17   facts that would put the validity of those addresses in question.  (*See generally* Mot.;

18   9/11/23 Billick Decl.)  Indeed, Anova has not made any effort to show that Defendants'

19   addresses "are incorrect or otherwise inadequate for purposes of serving" them.  *Tian*,

20   2022 WL 486267, at *4.

21       Second, Anova does not put forth evidence that Defendants are purposefully

22   evading service.  (*See generally* Mot.)  Rather, Anova merely states that Inkbird did not

1    respond to its email containing the complaint and a waiver of service. (*See* Service Status

2    Report ¶ 3.) It also states that Inkbird's purported U.S. trademark counsel has not

3    responded to Anova's email containing the complaint and case schedule. (9/11/23 Billick

4    Decl. ¶ 12 (noting that Anova received a "read receipt" from one of the lawyers).[6]

5    Accordingly, absent additional evidence, such as evidence of Anova's attempts to reach

6    Defendants and Defendants' evasive actions, the court cannot conclude that Defendants

7    are evading service. *See, e.g.*, *Kowalski v. Anova Food, LLC*, No. CIV.

8    11-00795 HG-RLP, 2012 WL 3308886, at *2 (D. Haw. Aug. 10, 2012) (rejecting

9    alternative service request where plaintiff did not present facts to suggest defendant was

10   evading service).

11          Finally, Anova's request to serve Defendants via the Hague Convention was

12   submitted on July 24, 2023, approved on July 25, and is currently being processed by the

13   Supreme People's Court of the People's Republic of China. (9/11/23 Billick Decl. ¶ 2.)

14   "Although the Hague Convention does not explicitly specify a timeframe for a foreign

15   country's Central Authority to effectuate service, there is a presumption that a Central

16   Authority has six months before a party can use alternate methods of service." *See Tevra*

17   *Brands LLC v. Bayer Healthcare LLC*, No. 19-cv-04312-BLF, 2020 WL 3432700, at

18   *3-4 (N.D. Cal. June 23, 2020) (citing Fed. R. Civ. P. 4(f) advisory committee's note to

19   1993 amendment); *U.S. Aviation Underwriters, Inc. v. Nabtesco Corp.*, No.

20   C07-1221RSL, 2007 WL 3012612, at *2 (W.D. Wash., Oct. 11, 2007) (noting that the

21

22          [6] Because counsel has not yet responded to Anova's email, it is unclear whether they actually maintain an ongoing relationship with Inkbird.

court can exercise its discretion to authorize alternative service when a country's Central Authority fails to effectuate service within the six-month period provided by the Hague Convention). "[T]he desire for expedience and efficiency alone is not sufficient to justify alternative service." *Tian*, 2022 WL 486267, at *2; *Keck*, 330 F.R.D. at 259. Moreover, Anova does not cite to any issues of urgency or any other factors that might weigh against effecting service under the Hague Convention. (*See generally* Mot.); *see, e.g.*, *Kowalski*, 2012 WL 3308886, at *3 (denying motion for alternative service where plaintiff did not face a threat of immediate, irreparable harm absent preliminary relief and did not establish that service under the Hague Convention would unreasonably delay the action). In short, the court finds that because the Chinese Central Authority/the Supreme People's Court has only been in possession of Anova's service request for a month and a half, an order authorizing alternative service under Rule 4(f)(3) is premature at this time. *See, e.g.*, *Tevra Brands*, 2020 WL 3432700, at *3-4 (denying motion for alternative service as premature where plaintiffs' non-defective request to serve defendants under the Hague Convention had only been in the foreign Central Authority/court's possession for three months).

Accordingly, based on the presented facts, the court finds that Anova has failed to show that alternative service on Defendants by email is warranted at this time. This does not mean that Anova must exhaust other means before resorting to Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1016. But, Anova needs "to demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention" under

//

1    Rule 4(f)(3).  *Id.*  Because Anova has failed to do so,[7] the court DENIES Anova's
2    motion for alternative service of process without prejudice.

3    **B.    Anova's Request for an Extension of Time to Complete Service**

4    Anova states that it needs additional time to serve Defendants and asks the court to
5    extend Federal Rule of Civil Procedure 4(m)'s "120-day time []period for service" by 14
6    days.  (Mot. at 4, 8 ("Alternatively, Anova requests an additional 60 days to effect service
7    on the Defendants via the [Hague Convention].").)  However, Rule 4(m) provides for a
8    90-day service limit, rather than a 120-day limit, and "does not apply to service in a
9    foreign country under Rule 4(f), 4(h)(2), or 4(j)(1)."  Fed. R. Civ. P. 4(m).  Because
10   Defendants do not appear to reside in the United States (*see generally* Compl. at 4-5),
11   Rule 4(m)'s 90-day service limit does not apply to Defendants.  Accordingly, the court
12   DENIES as moot Anova's request for an extension of time to serve Defendants.
13   However, the court ORDERS Anova to file a report regarding the status of service of
14   process on Defendants every 30 days.  The court warns Anova that the failure to make
15   diligent efforts to serve Defendants may result in the dismissal of Defendants for failure
16   to prosecute.  *See* Fed. R. Civ. P. 41(b).

17   **C.    Anova's Request to Extend the Deadlines Set Forth in the Court's Initial
         Scheduling Order**

18
19   Anova asks the court to extend the deadlines set forth in the court's initial
20   scheduling order (6/28/23 Order (Dkt. # 17)) because it "has not received any contact

21
22   _____
     [7] In light of this conclusion, the court does not address whether service by email (1) is
     prohibited by an international agreement and (2) comports with due process.

ORDER - 10

from the Defendants during this case, and is therefore unable to comply with" the court's order.  (Mot. at 12 (asking for a 30-day extension if email service is authorized).)  The court finds that good cause exists to extend the deadlines outlined in the court's initial scheduling order.  Fed. R. Civ. P. 6(b), 16(b); Local Rules W.D. Wash. LCR 16(a). Because none of the Defendants have appeared, the court find it appropriate to vacate, rather than reset, the deadlines set forth in its initial scheduling order.  The Clerk will enter a new initial scheduling order if and when Defendants appear in this action.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Anova's motion for an extension of time to serve Defendants, for alternative service of process, and to extend the deadlines set forth in the court's initial scheduling order (Dkt. # 27).  Specifically, the court ORDERS as follows:

1.    Anova's request to extend the deadlines set forth in the court's initial scheduling order is GRANTED.  The court VACATES the deadlines set forth in its initial scheduling order (Dkt. # 17).  The Clerk will enter a new initial scheduling order if and when Defendants appear in this action;

2.    Anova's request for an extension of time to serve Defendants is DENIED as moot.  The court ORDERS Anova to file a report regarding the status of service of process on Defendants within 30 days of the filing date of this order and every 30 days thereafter; and

3.    Anova's request to serve Defendants via email is DENIED without prejudice.  Anova may renew its motion with evidence (1) establishing that the facts and

circumstances of this case require alternate service of process under Rule 4(f)(3) and

(2) demonstrating why service using either the email addresses associated with Inkbird or

its purported U.S. trademark counsel is a reliable method to provide Defendants with

notice of this action.

Dated this 14th day of September, 2023.

JAMES L. ROBART
United States District Judge

ORDER - 12